IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

ARVY PETERS,

    Plaintiff,

v.    CV 214-083

ZWS/ABS JOINT VENTURE d/b/a
ZERO WASTE SOLUTIONS,

    Defendant.

## O R D E R

Currently before the Court are two motions: Defendant's motion for partial summary judgment (doc. 26) and Defendant's motion to strike (doc. 34). For the reasons discussed below, Defendant's motion for partial summary judgment is **GRANTED**, and Defendant's motion to strike is **DENIED**.

### I. Background

This case stems from Plaintiff Arvy Peters's employment with Defendant ZWS/ABS Joint Venture ("ZWS"). ZWS holds a government contract, under which it provides janitorial services to the Federal Law Enforcement Training Center in Brunswick, Georgia. (Doc. 29, Ex. E ("Singh Dep.") at 7-8.) ZWS hired Peters in 2011 as an environmental coordinator, a position that required him to perform janitorial inspections and, important to

this case, work certain Saturdays to pressure wash buildings. (Doc. 29, Ex. A ("Peters Dep.") at 19, 34.) At some point in 2011, Peters approached his supervisor, James McClinton, about concerns he had regarding his Saturday work. (Id. at 54-55.) Although the exact details of the conversation are not clear from the record, Peters claims that he spoke with McClinton about receiving overtime pay for that work.

Peters subsequently voiced similar concerns. At a meeting held in April 2013, McClinton informed Peters and others that they would need to report to work on Saturdays to perform pressure-washing duties, at which time Peters informed McClinton that working Saturdays would be difficult for him because his wife now worked many weekends. (Id. at 55-56.) Then, in either May or June 2013, Peters claims that McClinton changed his schedule to require Peters to work every Saturday and gave him every Tuesday off. (Id. at 63.) Although the record is not clear on this, it was apparently McClinton's normal procedure to give his employees a day off during the week when he required them to work on a Saturday. (See Doc. 29, Ex. D ("McClinton Dep.") at 108.) Peters complained about overtime pay again in August 2013.

Also relevant to the issues now before the Court, at a meeting in July 2013, McClinton used a racial epithet in front of Peters and other employees. (Peters Dep. at 96-97.) Peters

2

subsequently reported McClinton's racial comment to Jai Sharma, a ZWS corporate manager. (Doc. 28, Ex. M.)

In either September or October 2013, ZWS terminated Peters. Shavila Singh, the president of ZWS, testified that ZWS had to reduce its services under the contract because of a government sequestration. (Singh Dep. at 11-12.) According to Singh, ZWS addressed the sequestration by, in part, terminating positions, including Peters's, and it distributed his duties among supervisors. (Id. at 17-18, 28.) Additionally, prior to Peters's termination, ZWS hired Jon Hardwick as a "zone manager." (McClinton Dep. at 106.)

Also subsequent to his termination, Peters claims that he applied for two positions with ZWS: a marketing position and a supervisor position. (Peters Dep. at 163.) According to Peters, ZWS never contacted him about either position. In June 2014, Peters, after exhausting his administrative remedies, initiated this action and alleges that ZWS violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, by failing to pay him overtime, retaliated against him in violation of the Fair Labor Standards Act, 29 U.S.C. § 215, and retaliated against him in violation of Title VII, 42 U.S.C. § 2000e—3. (Doc. 1.) ZWS now moves for summary judgment on the FLSA and Title VII retaliation claims. ZWS also moves to strike certain documents Peters attached to his response in opposition to ZWS's motion for partial summary judgment.

3

## II. Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes

4

v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

In this action, the Clerk of the Court gave Peters notice of the motion for summary judgment and informed him of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 27.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. **Discussion**

The Court will first address the FLSA and Title VII retaliation claims, followed by ZWS's motion to strike.

**A. FSLA Retaliation**

The FLSA prohibits employers from retaliating against employees who assert their rights under the statute. See 29 U.S.C. § 215(a)(3). In a retaliation claim based on circumstantial evidence, courts apply the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting framework. See Henderson v. City of Grantville, 37 F. Supp. 3d 1278, 1282 (N.D. Ga. 2014). Thus, an employee must first establish a prima facie case by showing that: "(1) [the employee] engaged in

6

activity protected under [the] act; (2) [the employee] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." Wolf v. Coca-Cola Co., 200 F.3d 1337, 1343-44 (11th Cir. 2000) (second alteration in original) (citation omitted) (internal quotation marks omitted). If the employee successfully establishes a prima facie case, the burden shifts to the employer to proffer legitimate, non-retaliatory reasons for its actions. Id. at 1343. If the employer does so, the employee must then show pretext. Id.

In this case, Peters points to his complaints to McClinton about overtime pay as his statutorily protected activity. ZWS argues that Peters did not engage in protected activity because his complaints were to McClinton, who did not make final termination decisions. The Court, however, is satisfied that Peters meets this element of the prima facie case. Informal complaints are often considered protected activity as long as the employer has sufficient notice of the complaint. E.E.O.C. v. White & Son Enters., 881 F.2d 1006, 1011-12 (11th Cir. 1989); Traweek v. Glob. Sols. & Logistics, LLC, No. 2:14-cv-00308-LSC, 2015 WL 4545634, at *6 (N.D. Ala. July 28, 2015). And an employee need only reasonably believe that he is engaging in protected activity. See Traweek, 2015 WL 4545634, at *6. Here, Peters's complaints were to his direct supervisor, and although McClinton did not have plenary power to terminate employees, the

record reflects that he could recommend employees for termination. (McClinton Dep. at 56.) Peters, therefore, has satisfied the first prong of the prima facie case.

Peters points to three different actions that he claims amount to adverse employment actions: (1) his schedule change that required him to work every Saturday; (2) ZWS's failure to hire him to fill the openings he applied for; and (3) the termination of his employment with ZWS. The Court will address each of these actions in turn. Employees are protected "not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006) (discussing adverse employment actions under the anti-retaliation provision of Title VII). The retaliation must be such that "it well might have dissuaded a reasonable worker from making or supporting a [complaint]." Id. at 68 (citation omitted) (internal quotation marks omitted). The employer's actions must be "materially adverse." Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008) (finding a poor performance review that affected an employee's eligibility for a raise to be an adverse employment action). An action that is a mere "inconvenience or alteration of responsibilities" will not satisfy this requirement. Bryant v. U.S. Steel Corp., 428 F. App'x 895, 898 (11th Cir. 2011) (per curiam).

### i. Schedule Change

Peters asserts that, when McClinton changed his schedule in 2013 to require him to work every Saturday, he suffered an adverse employment action. To support this argument, Peters points only to the fact he told McClinton that Saturdays were no longer convenient for him. The Court is not persuaded that the schedule change was materially adverse. First, undisputed evidence shows that Peters was accustomed to working Saturdays—he had previously worked Saturdays as far back as 2011. (Peters Dep. at 36.) Although the record is not clear about whether he had previously been required to work *every* Saturday, the period of indefinite Saturday work in 2013 lasted, at most, from May until October. McClinton also announced in the meeting that Saturday work would be needed for pressure washing—the same reason employees had previously been required to report on Saturday. (See id.) Peters has not put forth any evidence showing materiality or harm, and his briefs assert materiality only in conclusory language. The Court, therefore, finds that Peters has failed to establish that his schedule change was an adverse employment action.

### ii. Failure to Rehire

Next, Peters claims that ZWS's failure to rehire him amounts to an adverse employment action. Peters claims to have applied for two positions with ZWS following his termination. One position was an "experienced supervisor" position, and

Peters refers to the other as the "marketing" position. (Doc. 28-1 ("Peters's Resp. Br. Opp'n") at 4, 15.) "An employer's failure to recall or rehire an employee is undoubtedly an adverse employment action where the employee reapplied for the position after termination." Jones v. Ala. Power Co., 282 F. App'x 780, 785 (11th Cir. 2008) (per curiam) (citation omitted) (internal quotation marks omitted). In any failure-to-hire case, an employee must establish that he is qualified for the position and that the position either remains open or was filled by someone else. See E.E.O.C. v. Comcast of Ga., Inc., 560 F. Supp. 2d 1300, 1310 (N.D. Ga. 2008).

Peters's failure-to-hire claim fails. First, he has not demonstrated that he was qualified for either position. Peters applied for the marketing position via the Georgia Department of Labor's website. In response, he received an e-mail from the Department of Labor explaining that he *appeared* qualified for the position and encouraging him to formally submit an application. (Doc. 28, Ex. K.) This, Peters argues, clearly shows that he was qualified for the position. And this is the only evidence Peters cites to establish his qualifications. The Court is not persuaded. This e-mail merely shows what it says: that Peters appeared qualified for the position. Regarding the supervisor position, in his briefs, Peters does not cite any portion of the record to support his qualifications and merely asserts in conclusory language that he was qualified. Peters

10

has also failed to address the required qualifications for either position.

Moreover, Peters has failed to allege that either position remains open or was filled by another applicant. In fact, ZWS asserts that it never filled the marketing position (Singh Dep. at 56.), which is a legitimate reason for not hiring Peters. See Duffy v. Lowe's Home Ctrs., Inc., 414 F. Supp. 2d 1133, 1144 (M.D. Ga 2006). Accordingly, the Court finds that ZWS's failure to rehire Peters does not amount to an adverse employment action.

### iii. Termination

Peters also asserts that his termination from ZWS constitutes an adverse employment action. The Court is satisfied that Peters's termination amounts to an adverse employment action. Accordingly, to establish a prima facie case, the causation element must be met. Wolf, 200 F.3d at 1343-44. A causal connection is established when there is temporal proximity. Henderson, 37 F. Supp. 3d at 1283. Generally, "the temporal proximity must be very close." Id. (citation omitted) (internal quotation marks omitted). Here, ZWS argues that too much time elapsed between Peters's complaint and his termination. Specifically, ZWS asserts that a two-year period passed because Peters first complained in 2011. But it is undisputed that Peters complained as recently as August 2013, so only two to three months had passed since his last complaint.

11

Although it is a close call, the Court is satisfied that Peters has established the causation element of the prima facie case. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (finding a seven-week lapse sufficiently proximate).

Because Peters has established a prima facie case of retaliation, the burden shifts to ZWS to proffer legitimate, non-retaliatory reasons for his termination. Wolf, 200 F.3d at 1343. ZWS asserts that it terminated Peters because of a government sequestration. Specifically, ZWS maintains that it eliminated the environmental coordinator position and distributed its duties among other employees, including managers and supervisors.

For his claim to survive, Peters must rebut this explanation and show that it was merely pretext for retaliation. Id. To amount to pretext, the evidence "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (per curiam) (citation omitted) (internal quotation marks omitted). "[A] mere scintilla of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough." Woodruff v. Sch. Bd. of Seminole Cty. Fla., 304 F. App'x 795,

798 (11th Cir. 2008) (per curiam) (citation omitted) (internal quotation marks omitted). And "a reason is not pretext for [retaliation] unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason." Bryant, 428 F. App'x at 898 (citation omitted) (internal quotation marks omitted).

Peters asserts that Hardwick, who was hired prior to his termination, took over his duties after he was terminated and that this shows pretext. The Court, however, is not convinced. Peters's argument simply affirms ZWS's legitimate reason. ZWS does not dispute that Hardwick performed many of Peters's duties. Instead, ZWS maintains that Hardwick was hired as a zone manager and that all the environmental coordinator duties were distributed among the managers and supervisors. Pointing to the fact that Hardwick took on Peters's responsibilities does not rebut ZWS's legitimate, non-retaliatory reasons because Hardwick held the exact position to which Peters's duties were distributed.

Peters also points to evidence that he claims shows that he was the only employee terminated after the sequestration. In their depositions, in addition to testifying that the environmental coordinator position was terminated, Singh and McClinton testified that other employees were let go not long after the sequestration. (Singh Dep. at 31-32; McClinton Dep. at 37.) Peters attached two affidavits to his response to ZWS's

13

motion for partial summary judgment. The affidavits were created by Idella Bradley and Shirley Peters, two ZWS employees, and Peters urges that they create a factual dispute about pretext because they show that he was the only employee terminated. Specifically, Idella Bradley's affidavit states, in part: "Arvy Peters was the only person who was terminated around the time of the government shutdown. About a year later . . . I know two members of the janitorial staff for the night shift who did not return to work."[1] (Doc. 28, Ex. G ¶ 18.) Shirley Peters's affidavit similarly maintains that she did not observe that any other ZWS employee was terminated until a later date. (Doc. 28, Ex. H ¶¶ 8-10.) Both affidavits also reference—but fail to identify—an employee ZWS hired following Peters's termination. The Court notes that both of these affidavits are almost entirely conclusory, and neither provides much factual basis for the declarations.

Viewing these last-minute, conclusory statements in the light most favorable to Peters, he has established, at best, simply that Singh and McClinton incorrectly testified that other employees were let go at the time they claimed. But these affidavits are more notable for what they fail to do: rebut that the environmental coordinator position had been eliminated.

---

[1] Bradley's affidavit also claims that she heard McClinton say that he planned to "get rid of" Peters. (Doc. 28, Ex. G ¶ 12.) Her affidavit, however, fails to provide any context and does not provide the time at which McClinton allegedly made this statement. The alleged statement, therefore, provides little support to Peters's claim.

14

That is, nothing in these affidavits indicates that ZWS retained an environmental coordinator or that it hired any additional environmental coordinators. Singh testified that the corporate office decided to eliminate the environmental coordinator position, which Peters held, and Peters has not pointed to any evidence that contradicts this reason. Peters has, therefore, failed to show pretext, and his retaliation claim based on his termination fails.

Because Peters has failed to show that his schedule change and ZWS's failure to rehire him constitute adverse employment actions, and because he has failed to show that ZWS's reason for terminating his employment was pretextual, Peters's FLSA retaliation claim fails as a matter of law. Accordingly, ZWS's motion for partial summary judgment on this issue is **GRANTED**.

### B. Title VII Retaliation

Peters also claims that his termination was in violation of Title VII. Under Title VII, it is unlawful to retaliate against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3. Similar to a retaliation claim under the FLSA, a Title VII retaliation claim requires an employee establish a prima facie case by showing: "(1) that [the employee] engaged in statutorily protected expression; (2) that [the employee] suffered an adverse employment action; and (3) that there is some causal relation between the two events." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir.

2007) (per curiam) (citation omitted) (internal quotation mark omitted). The McDonnell Douglas burden-shifting framework also applies to Title VII retaliation claims, and the employer has the opportunity to articulate legitimate, non-retaliatory reasons for its actions. Brown v. Ala. Dep't. of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). If the employer does so, then the employee must rebut those reasons and show pretext. Id.

To establish a Title VII retaliation claim, an employee must have a reasonable belief that the employer is engaged in an unlawful employment practice. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1213 (11th Cir. 2008). An employee "must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." Id. (quoting Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)). Peters's claim is based on his reporting McClinton's use of a racial epithet during a meeting, and ZWS argues that Peters has not shown that he engaged in protected activity. The Court agrees. Throughout his briefs on this motion, and in his complaint, Peters repeatedly references that he was offended by McClinton's comment. Not once does he attempt to show how the comment amounts to an unlawful employment practice. In fact, he does not even reference evidence that shows he reasonably believed that the comment was unlawful. Peters's claim is based

16

solely on the offensiveness of the comment, and "[m]ere offense does not rise to the level of reasonable belief that [ZWS] was engaging in an unlawful employment practice." Ali v. Educ. Corp. of Am., No. 4:11-CV-2743-KOB, 2012 WL 5379132, at *7 (N.D. Ala. Oct. 31, 2012).

Even if the Court were to find that Peters established a prima facie case, his claim would fail because he has not rebutted ZWS's legitimate, non-retaliatory reason for its action. The only adverse employment action Peters presents to support his claim is his termination. ZWS proffered the same reason for his termination as it did for his FLSA retaliation claim—that it terminated Peters's position because of the government sequestration. And Peters attempts to rebut that reason by referencing evidence that indicates that he was the only employee terminated. But, as discussed above, Peter has not pointed to any evidence that shows that ZWS retained or subsequently hired other environmental coordinators. Accordingly, Peters has failed to show pretext. Because Peters cannot establish a prima facie case of retaliation under Title VII and cannot show pretext, his claim fails as a matter of law. ZWS's motion on this issue is **GRANTED**.

### C. ZWS's Motion to Strike

In response to ZWS's motion for partial summary judgment, Peters attached the affidavits of Idella Bradley (doc. 28, ex. g) and Shirley Peters (doc. 28, ex. h) and his own declaration

17

(doc. 28, ex. i). ZWS responded by filing a motion to strike portions of these documents because they are not based on personal knowledge and, therefore, fail to meet the requirements of Federal Rule of Civil Procedure 56. The Court, however, finds it unnecessary to separately address these arguments because summary judgment is proper even in light of the documents. Accordingly, ZWS's motion is **DENIED AS MOOT**.[2]

### IV. Conclusion

For the reasons stated above, Defendant ZWS/ABS Joint Venture's motion for partial summary judgment (doc. 26) is **GRANTED**, and ZWS's motion to strike (doc. 34) is **DENIED AS MOOT**.

**ORDER ENTERED** at Augusta, Georgia this 16th day of February, 2016.

```
_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA
```

---

[2] In a one-line request in the conclusion portion of Peters's response brief on this issue, his attorney asks the Court to award attorneys' fees for having to respond to ZWS's motion to strike. Upon consideration, the Court denies that request.